[Civ. No. 624. Fourth Appellate District.—January 22, 1932.]

NEWPORT BAY DREDGING COMPANY (a Corporation), Appellant, v. GLEN HELM, Respondent.

C. C. Towner for Appellant.

Forgy, Reinhaus & Forgy and A. M. Bradley for Respondent.

LAMBERT, J., *pro tem.*—The plaintiff and appellant Newport Bay Dredging Company, a corporation, instituted an action against the defendant and respondent Glen Helm for the restitution of certain premises situated on Newport

Bay and for damages for withholding possession for more than three years. The respondent, in addition to an answer denying the allegations of the complaint, filed a cross-complaint setting forth two causes of action. In the first cause of action he pleaded title by adverse possession and in the second cause of action he alleged that the plaintiff had deeded all of its right, title and interest in and to the premises to respondent. There was a failure of proof on the first cause of action set forth in the cross-complaint but the court gave the respondent judgment on the second cause of action decreeing him to be the owner of the premises which are the subject of this controversy. The court made findings of fact and conclusions of law responsive to the pleadings. The facts developed by the evidence appear in the court's finding number 10 hereinafter set forth. The appellant brings this appeal under the provisions of section 953a of the Code of Civil Procedure, and brings up a typewritten record.

The appellant urges for reversal of the judgment, the following: First, the court erred in refusing to grant plaintiff a new trial; second, the evidence does not support the findings, conclusions and judgment of the court; third, the judgment is not supported by the law; fourth, the judgment is not supported by the evidence.

As to the first assignment, finding number 10, to which appellant's attack is particularly directed, is as follows:

"That on or about the 8th day of January, 1927, the plaintiff, by and through its duly authorized officers, executed a deed to this property and other property, to the defendant and others and deposited said deed with one Robert C. Mize, an attorney at law at Santa Ana, California, with instructions to deliver said deed to the defendant and others when the defendant and others had signed applications for membership in a certain association whose avowed purpose it was to determine the harbor lines of Newport Bay, particularly in an action then pending against the property owners by the City of Newport Beach; that said Association had hired attorneys for the purpose of determining said lines and defending said action, or if all grantees named in said deed did not sign said application but some did, to use and deliver said deed as, if and when he saw fit so to do; that it was to the advantage of the plaintiff to join as many property owners as possible to said Association for the purpose of

minimizing costs, attorneys fees and expenses to the plaintiff through its assessments through said association; that the said Mize thereupon communicated and told this defendant that said deed had been executed, and that the same would be delivered to this defendant if he would sign an application for membership in said association, and thereby become liable for his *pro-rata* of the expenses in determining said lines and in the defense of said action through assessments by said association; that in consideration of said promises the said defendant did execute said application for membership and thus became liable; that all other property owners with the exception of the owners of one small parcel of property did execute similar applications for memberships, and thus became liable; that the said Robert C. Mize thereupon determined that said deed should be delivered, but that in view of the owners of one parcel of property not having executed said application for membership that in fairness to the plaintiff the name of said grantee and of said specific property should be eliminated from said deed; that the said Mize communicated this fact to the plaintiff, and the plaintiff agreed thereto and agreed to execute a new deed exactly in the same terms as the original deed except eliminating the owners of the one piece of property who had not executed said application for membership; that in view of said promises the said Mize at the specific request of the plaintiff, and upon its express agreement and representation that it would immediately execute a new deed, as aforesaid, and return the same to the said Mize for recordation and delivery, returned said deed to the plaintiff; that the plaintiff made said representations and promises to the said Mize without any intention of performing the same, and fraudulently took back said deed and destroyed the same, and refused to execute the new deed in its place; that this defendant is entitled to the delivery of said deed.''

Appellant's argument is directed to the weight of the evidence, and that being true we cannot disturb the findings of the trial court if there is any substantial evidence in the record to sustain them. In *Keyes* v. *Nims,* 43 Cal. App. 1, at page 8 [184 Pac. 695, 698], it is said:

''But in determining whether the findings of the court are supported, we are required only to look to the testimony presented by the plaintiff and, if sufficient, we may disregard, in

such consideration, any adverse showing made by the defendants." Also in *King* v. *California Bank*, 73 Cal. App. 136, at 137 [238 Pac. 108, 109], the court said: "It is, of course, elementary that the determination reached by the trial court upon all matters of fact is binding upon an appellate court, except only in the single instance where there is no substantial evidence to support its findings. Therefore, the only action within the power of this court is to inquire and determine whether there is any substantial evidence to support the findings of the trial court, and if such evidence is found in the record, then the findings must stand, notwithstanding the satisfactory character of appellant's evidence."

It was the contention of respondent, who prevailed at the trial, that the appellant executed the deed in question and delivered it to the witness Mize as escrow-holder with instructions that when the respondent signed the association contract referred to in finding 10, the respondent would then and there be entitled to the deed. The appellant contends that this was not the case, but that it was to be delivered only when all the grantees (there being five grantees in the deed) had signed this association contract. The entire evidence in the record has been read, and from the evidence produced by the respondent we find that the witness Mize testified positively that the deed was given to him with instructions to deliver it when the grantee signed the contract of the association, and that when he called the attention of Culp to the fact that a grantee had failed to sign the contract he said "We will just take him out of the deed", and he promised to give Mize another deed with the Lockwoods left out of it. Also, quoting from this witness' testimony:

"Q. Mr. Mize, were you ever instructed not to deliver the deed unless all of the grantees therein signed the application? . . . A. Not that I can recall. My memory of the instructions is that whenever an owner in that block signed an application he would be entitled to his deed. . . . The Court: Q. You say each one was entitled to a deed as he signed the application? Witness: A. Yes."

The defendant Helm also corroborated the testimony of Mize in some particulars. The testimony of Mr. Culp was for the most part favorable to the side of appellant. The other witnesses did not testify to the vital issues in the case. The appellant admits the fallacy of his argument on this

branch of the case when in his closing brief he says: "There is a conflict in the testimony of Mr. Mize and Mr. Culp." This conflict in the evidence was a matter to be determined in the first instance by the trial court and he has determined it against the appellant. There being substantial evidence in the record to support the court's findings this court may not disturb them. (*Quatacker* v. *Hutton*, 108 Cal. App. 609 [292 Pac. 140]; *Keyes* v. *Nims*, and *King* v. *California Bank, supra.*)

The next contention of appellant is that the judgment is not supported by the law. Under this assignment it is the claim that first, there was no contract between appellant and respondent; second, there was no consideration for the promise and that the signature to the deed was obtained by fraud; third, that the appellant had the right to revoke his instructions at any time before the deed was actually physically delivered to Helm. This last point is the question in the case. ■ As to the consideration, section 1605 of the Civil Code defines a consideration as follows:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

We think the evidence plainly shows a consideration not only under the code section but according to the authorities cited by appellant. The fact that respondent did not actually pay any assessments is of no weight, inasmuch as he was never called upon to pay any. There was no evidence of any fraud on the part of respondent Helm. ■ As to the question of the contract between appellant and respondent it appears from the evidence and findings in the case that the witness R. C. Mize was at the time of this transaction an attorney at law and secretary of the Orange County Title Company and also one of the directors of the association herefore referred to; that the witness Culp was secretary of appellant; and that appellant was a member of the association known as the Orange County Harbor Land Owners Association and that the deed duly executed by the appellant was delivered to R. C. Mize with the instructions to deliver the deed to Helm when he had obtained his

signature to the association contract heretofore described. Mize, for the purposes of the negotiations, was of course the agent of appellant and whatever he did constituted the act of appellant. Therefore we think that there was a contract between appellant and respondent as to the execution and delivery of the deed. But appellant argues that he had the right to revoke his instructions. In his brief he says:

"Where one deposits a deed with directions to the depositary to deliver to the grantee on the happening of a given event, but grantor has made no valid executory contract to convey, he may revoke directions to the depositary and recall the deed at any time before conditions of deposit have been complied with, provided those conditions are such that title does not pass at once to the grantee upon delivery of the deed to depositary." (Citing *Campbell* v. *Thomas*, 42 Wis. 437 [24 Am. Rep. 427], in support thereof.)

We think the above quotation is a correct statement of the law, but is of no aid to appellant. In fact it seems to support the judgment in the instant case. Appellant also cites *Holland* v. *McCarthy*, 173 Cal. 597 [160 Pac. 1069], but a careful reading of this case makes it easily distinguishable from the case at bar, as it clearly appears in that case that Holland, the owner of the property, never at any time made any contract to sell the same to any person. The witness R. C. Mize was undoubtedly the agent of the appellant when he was given the deed executed by appellant and authorized to enter into a contract on behalf of appellant with the grantees, one of which was the respondent Helm, named in the deed, and when he was instructed that the grantees would be entitled to the deed upon signing an application for membership in the association. Before this agent, appointed by it, had exercised his authority, the plaintiff could of course revoke the authority and recall the document in his possession. When, however, the agent fulfilled his instructions and exercised the authority given him he became more than the plaintiff's agent and held the position of trustee of the deed for the benefit of the grantee. In the case of *Shreeves* v. *Pearson*, 194 Cal. 699, at 707 [230 Pac. 448, 451], it is said:

"It is conceded to be the correct rule of law that when papers, moneys, or other articles are by the agreement of parties to a transaction delivered to an escrow holder to be

held by him in that capacity and to be distributed by him to the respective parties or to other persons upon the performance of the terms of the escrow he is, prior to the performance of the conditions of the escrow, the agent of both parties thereto (*Cannon* v. *Handley*, 72 Cal. 133 [13 Pac. 315]; *McDonald* v. *Huff*, 77 Cal. 279 [19 Pac. 499]), and that it is equally sound law that whenever the conditions attending the escrow have been so far performed that the transaction which has called the escrow into being becomes complete the nature of this dual agency changes to an agency not for both, but for each of the parties to said transaction in respect to those things placed in escrow to which each has thus become completely entitled. To apply a simple illustration, whenever a deed is deposited in escrow by the grantor to be delivered to the grantee upon payment by him to the escrow holder of a sum of money to be by the latter delivered to the grantor upon the production by the latter of a satisfactory certificate of title, the escrow holder is as to such deed and money the agent of both parties until such time as the said satisfactory certificate of title is produced, but he thereupon becomes the agent of the purchaser as to such deed and of the seller as to such money. The cases above cited sustain this view, as do also the cases of *Bradbury* v. *Davenport*, 120 Cal. 152 [52 Pac. 301]; *Marr* v. *Rhodes*, 131 Cal. 267 [63 Pac. 364]; *Whitney* v. *Sherman*, 178 Cal. 435 ]173 Pac. 931]."

In *Law* v. *Title Guarantee & Trust Co.*, 91 Cal. App. 621, at 627 [267 Pac. 565, 568], this case of *Shreeves* v. *Pearson* is cited and approved, the language in this case being as follows:

"Section 1057 of the Civil Code, defines an escrow as follows: 'A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary it will take effect. While in possession of the third person, and subject to condition, it is called an escrow.' It will be observed that it is only while the instrument is subject to the conditions imposed that the deposit will be deemed to be an escrow. When the conditions upon which the deposit of the instrument have been fully performed, the relationship of the interested parties automatically changes and the depositary is then deemed to hold the instrument as a trustee for the party en-

titled thereto. In the case of *Shreeves* v. *Pearson,* 194 Cal. 699, 707 [230 Pac. 448, 451], it is said: ' . . . whenever the conditions attending the escrow have been so far performed that the transaction which has called the escrow into being becomes complete the nature of this dual agency changes to an agency not for both, but for each of the parties to said transaction in respect to those things placed in escrow to which each has thus become entitled.'· So, also, in the case of *Feisthamel* v. *Campbell, supra,* at page 781 [55 Cal. App. 774, 781 (205 Pac. 25, 28)], the court quotes with approval from 10 Ruling Case Law, at page 640, the following: ' . . . upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee, although not in fact physically delivered to him, a deed .theretofore in escrow becomes *ipso facto* the deed of the grantee in whom the title vests and that thence forth the depositary or holder is regarded as the mere agent or trustee of the grantee.' "

Furthermore, it would appear that even if the custodian of the deed, Mize, was only the agent of appellant, the appellant could not after having obtained the signature of respondent to the association contract then revoke its promise to give respondent the quitclaim deed.

As is said in *E. Aigeltinger, Inc.,* v. *Burke,* 176 Cal. 621, at 627 [169 Pac. 373, 376] : "One cannot knowingly accept the benefits of a contract made in its behalf, or in which it is interested, and refuse to be bound by its terms and conditions." Under the authorities quoted we conclude that the appellant could not revoke his instructions after the association contract had been signed by the defendant Helm and that the deed was just as effective as if actual delivery had been made. The intention of the grantor when it delivered the deed to the depositary Mize was, of course, a material factor, but is a question of fact for the trial court to determine. (*Williams* v. *Kidd,* 170 Cal. 631, at 638 [Ann. Cas. 1916E, 703, 151 Pac. 1, 9].) And in the same case it is also said, quoting from *Bury* v. *Young,* 98 Cal. 446 [35 Am. St. Rep. 186, 33 Pac. 338] : " 'If after such a conveyance is so delivered that the grantor has no dominion or control over it or right to recall it, he gains possession of it and wrongfully destroys it, there can be no doubt that he cannot profit by his wrongful act or deprive his grantees of their interest thereby without their consent.' "

136

We are of the opinion that the record in this case shows that the deed was delivered to R. C. Mize by the appellant with the intention that title should vest in the respondent Helm upon the happening of the contingency called for by its instructions. The findings being supported by the evidence the trial court therefore entered the proper judgment. This disposes of all the points raised by appellant requiring discussion. We find no reversible error in the record.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.